NASHVILLE,................DECEMBER TERM, 1876.

JNO. C. ORGAN, Adm'r, etc. *v.* SAMUEL ALLISON.

STATEMENT OF CASE:—In 1856, Moores borrowed $1,000 of plaintiff's intestate, and executed his note under seal, and Allison also signed the note with his seal, as a surety; other sureties also signed the note with their seals, and lastly it was signed by one of the partners, N. Ward, by his firm name of N. & S. Ward, with a seal annexed to the signature of the firm, and was then delivered by Moores to intestate and the $1,000 paid over to him. When the note was delivered to Gordon, the intestate, it had no blot on, or erasure of the seal to the firm name of N. & S. Ward, but when the suit was brought, in 1867, there was an oblong blot, or obliteration of the word seal, made by ink of a different color from that in which the note, signatures and seals thereto were originally written. There is no direct evidence showing when, how or by whom the word seal was effaced.

1. BILLS AND NTOES. *Seal. Obliteration of. Evidence. Alteration of written instrument. Principal and surety.* The erasure of a seal under the circumstances of this case, was such an alteration as changed the legal character and effect of the instrument, and was therefore material, and released the surety upon the same.
   Cases cited: Blair *v.* Bank of Tenn., 11 Hum., 84; Crockett *v.* Thomason, 5 Sneed, 345.

2. SAME. *Same Same.* It is not necessary to release the surety that the alteration should be made by the party entitled under it, or the payee or holder thereof.

3. SAME. *Same. Same. Presumption of law.* If it appears from the face of the writing, that a seal was annexed to the name of N. & S. Ward, and there are grounds of suspicion that said seal has been erased, the burden of showing when the same was made, the person by whom made, and the intent with which it was made, is upon the plaintiff. As to whether there was a seal, and whether the mark after their

Organ *v.* Allison.

name is an erasure, are questions of fact for the jury to determine; if they should think such mark was a mere blot, put there by accident, or a stranger, it would not be an alteration.

FROM SMITH.

Appeal from the Circuit Court. ——— ———, J.

No counsel marked.

DEADERICK, C. J., delivered the opinion of the court.

This case is brought from the Circuit Court of Smith county by writ of error. It is an action brought on a note under seal—one Moores being principal, and defendant Allison and others sureties.

More than half the record consists in pleas, replications, demurrers and motions to strike out, etc. But the material and controlling question arose on the following facts, under the pleas of *non est factum.*

In 1856, Moores borrowed $1,000 of plaintiff's intestate and executed his note under seal, and Allison also signed the note with his seal, as a surety; other sureties also signed the note with their seals, and lastly it was signed by N. Ward, one of the partners, by his firm name of N. & S. Ward, with a seal annexed to the signature of the firm, and was then delivered by Moores to the intestate, and the $1,000 paid over to him.

When the note was delivered to Gordon, the intestate, it had no blot on, or erasure of the "seal," to the firm name of N. & S. Ward; but when the suit was brought, in 1867, there was an oblong blot

on, or obliteration of the word "seal," made by ink of a different color from that in which the note, signatures and seals thereto were originally written. There is no direct evidence showing when, how or by whom the word seal was effaced.

Bowen, the son-in-law of Gordon, who was examined as a witness by defendant, stated that when Moores delivered the note to Gordon, the latter re-marked that he thought Nathan Ward knew better than to sign the firm name to a seal," etc.

The defendants offered to prove by witnesses how the obliteration seemed to have been made, whether by accident or design, but plaintiff objected, and the court sustained the objection and the evidence was excluded.

The plaintiff excepts to the charge of the court, in its instructions upon the question of the alleged alteration of the instrument sued on.

The court stated to the jury that any material alteration in a bill single, or promissory note, after its execution, made by payee or maker, without the surety's consent or ratification, would release him; and further, states "that in order to release the surety, it is not necessary that the alteration should operate to the prejudice of the party sought to be charged, for the identity of the instrument is changed, and another is substituted without his consent."

This latter paragraph of the charge, it is insisted, is inconsistent with the rule laid down in *Blair* v. *The Bank of Tennessee*, 11 Hum., 84. In that case the court say: "The alteration of a note or bill which

will have the effect to discharge the party bound, must be in a material part. If the alteration does not affect the rights or responsibilities of the parties it will not render the instrument void, in the absence of a fraudulent intent." Again, it is said in that case, if the alteration does not give the instrument a *different legal effect,* and no one can be misled or prejudiced thereby, it is not an alteration in the sense of the law. Citing 1 Greenl. Ev., secs. 565–6, where one reason for the rule that instruments that are altered in the legal sense of that term are thereby made void, is stated to be to insure the identity of the instrument and prevent the substitution of another, without the privity of the party concerned. *Ibid,* section 565.

This section of Greenleaf's Ev. is quoted and approved in the case of *Crockett* v. *Thomason,* 5 Sneed, 345, where Judge Caruthers says, the alteration "imports a fraud in law, whether so intended or not, *and even if no injury is done,* and the change abandoned by the party, in whose favor it was intended to operate, the consequence, upon strong grounds of policy, and settled rules of law, is the same."

In the case of *Blair* v. *The Bank,* the alleged alteration consisted simply in adding the christian and individual names of the drawers to the bill; and this addition, it was held, did not change the meaning, or give to the instrument a different legal effect, and was therefore not an alteration of the instrument in the sense of the law, and consequently immaterial. Gr. Ev., sec. 567. "Any alteration which causes the in-

strument to speak 'a language different in *legal effect,* from that which it originally spake, is a material alteration." Greenl. Ev., 565.

In the case in 5th Sneed, the note, as originally written, fell due 25th December, 1854, and was altered so as to fall due 25th December, 1853, by writing the figure 3 over the figure 4, in 1854, and this was held properly to be a material alteration, rendering the note void—changing, as it did, the meaning and legal effect of the instrument.

The alteration in this case, if it be an alteration, as contradistinguished from the spoliation or mutilation of the instrument by the act of a stranger to the contract, consists in the erasure of the seal annexed to the names of N. & S. Ward.

Assuming it to have been done by the payee or principal obligor in the note, did it alter the legal meaning or effect of the instrument? If it did, it was a material alteration, and rendered the note invalid as against the defendant, who signed it with Ward, and at or about the same time as a surety. N. Ward had no power to bind his partner by signing their firm name under seal. The proof also discloses that neither partner had any power to bind the firm as surety or accommodation endorser.

As the signature originally stood, N. Ward was bound under the seal; as altered, he was not. In the last case the statute of limitations of six years would protect him against a recovery on the claim, while before he had no such protection, or advantage over his co sureties. The legal effect of the instru-

ment was, therefore, changed by the alteration. The alteration changed the legal character and effect of the instrument, and was therefore material, and the surety was not bound thereon. The charge of the court was therefore correct on this point.

The court below further instructed the jury, if Moores, the principal, or Gordon, the payee, erased the seal to the signature of N. & S. Ward, without the knowledge or consent of Allison, he, Allison, would be released thereby. And this, it is insisted, is error, as it is argued that the alteration, to avoid it, must be made by "the party entitled under it, or the payee, or holder thereof."

The case of *Wood* v. *Steele*, 6 Wal., 80, was the case of an alteration of the date, by the maker, before delivery to the payee, and it was held that the security was discharged. The court in that case say, that a material alteration in any commercial paper, without the consent of the party sought to be charged, extinguishes his liability, and adds, that the grounds of the discharge is, that it is no longer the contract into which defendant entered; its identity is changed; another is substituted without his consent; and by a party who had no right to consent for him. See also 1 Greenl. Ev., sec. 565. There was, therefore, no error in the charge of the court on this point.

The court further charged the jury, if there are palpable alterations on the face of the instrument, the presumption of law is, that they were made at the time of signing. If any ground of suspicion is apparent upon the face of the instrument, the law pre-

sumes nothing, but leaves the questions of the time when it was done, as well as that of the person by whom, and the intent with which the alteration was made, as matters of fact, to be found by the jury, upon evidence, to be adduced by the party offering the instrument in evidence.

The court further said: "If it appears from the face of the writing that a seal was annexed to the name of N. & S. Ward, and there are grounds of suspicion that said seal has been erased, the burden of showing when the same was made, the person by whom made, and the intent with which it was made, is upon the plaintiff. As to whether there was a seal, and whether the mark after their name is an erasure, are questions of fact for you to determine. If you should think such mark is a mere blot put there by accident or a stranger, it would not be an alteration." The judge then properly instructed the jury as to the difference between an alteration and spoliation. This part of the charge is fully sustained by sec. 560, 1 Greenl. Ev., and is partly extracted from it.

The jury, upon a correct charge, found that the obliteration of the seal was an alteration, and in view of the fact that it is clearly shown. no such obliteration existed at the time the note was delivered by Moores to Gordon, and that he or his personal representatives were from that time and until its production in this case in possession of the note, and in view also of his remark when the note was delivered to him, about the want of power in one partner to bind another under seal, as well as from the appear-

ance of the mark itself, and total absence of explana-
tion, we are of opinion they were warranted in their
conclusion that the alteration was such a material al-
teration as to extinguish the liability of said Allison
on said note.

The judgment will be affirmed.